**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DAVID L. FLOYD, | : | Civil No.  11-3593 (JBS) |
| Petitioner, | : |  |
| v. | : | **OPINION** |
| DONNA ZICKEFOOSE, | : |  |
| Respondent. | : |  |

**APPEARANCES**:

    DAVID L. FLOYD, Petitioner pro se
    # 27522-038
    FCI Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey 08640

    JOHN ANDREW RUYMANN, AUSA
    OFFICE OF THE U.S. ATTORNEY
    402 East State Street, Suite 430
    Trenton, New Jersey 08608
    Counsel for Respondent

**SIMANDLE, Chief Judge**

Petitioner, David L. Floyd ("Floyd"), confined at the FCI Fort Dix in Fort Dix, New Jersey, at the time he filed this action, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3), challenging his prison facility designation at FCI Fort Dix.  The named respondent is the Warden at FCI Fort Dix, where Floyd was confined at the time he filed his habeas petition.  On August 25, 2011, respondent filed a motion to dismiss the petition.  (See Docket entry no. 12).  For

the reasons stated below, finds that the petition should be dismissed without prejudice for Petitioner's failure to exhaust his administrative remedies, or alternatively, for lack of subject matter jurisdiction.

## I. BACKGROUND

### A. Factual and Procedural Background

Floyd filed the instant habeas petition on or about June 23, 2011, challenging his prison designation at FCI Fort Dix, and seeking a transfer to a Federal Medical Center ("FMC"), namely, the FMC Devens. In his petition, Floyd alleges that he was sentenced to 70 months imprisonment for his federal court conviction on charges of possession/receiving child pornography. Floyd further alleges that he has an extensive mental health history that was outlined in his federal presentence investigation report. Based on his mental health history, the sentencing judge recommended that Floyd be committed to the Fort Devens medical treatment facility. (Petition at pg. 2). However, Floyd was designated to serve his sentence at the FCI Fort Dix. Floyd alleges that on August 25, 2010 and again on May 10, 2011, he was physically attacked by other inmates at FCI Fort Dix. For his safety, Floyd was placed in a Special Housing Unit ("SHU"). On May 26, 2011, Floyd was placed in the SHU at FCI Fort Dix indefinitely based on threats of another inmate attack

on Petitioner.  Floyd also was informed that a transfer to another prison facility was being contemplated.  (Pet., pg. 3).

Floyd alleges that he receives Social Security Disability payments for his mental illness and that he was hospitalized on three separate occasions from 1980 through 2010, with diagnoses of post-traumatic syndrome disorder ("PTSD"), manic bi-polar disorder (rapid cycle), clinical depression and anxiety disorder. Petitioner also has been prescribed medications for treatment of his mental disorders.  (Pet., pg. 4).  In particular, Floyd relates that he had been hospitalized at the Arbour Fuller Hospital in Attleboro, Massachusetts for psychiatric care before he voluntarily self-surrendered to the U.S. Marshals to serve his federal sentence.  (Pet., pg. 4).  Floyd asserts that the decision of the Federal Bureau of Prisons ("BOP") not to transfer him to the FMC Devens violates his Eighth Amendment right against cruel and unusual punishment and his Fifth Amendment right to equal protection.[1]  He also claims that 5 U.S.C. § 552a requires the BOP to correct its system of records to reflect that Petitioner is mentally ill and not suitable for housing in a general population federal prison facility.  (Petition, pp. 4-6).

On August 25, 2011, Respondent responded to the habeas

---

[1] Floyd asserts his right to equal protection under the laws pursuant to the Fourteenth Amendment.  However, because he is a federal prisoner, his claim is more appropriately construed under the Fifth Amendment.

petition by filing a motion to dismiss for failure to exhaust administrative remedies, or alternatively, for lack of subject matter jurisdiction. (Docket entry no. 12).  Respondent provided the relevant record in this matter, which was appended to the Declarations of Kevin Bullock and Tara Moran.  (Docket entry nos. 12-2 and 12-3, respectively).  The record provided by the Respondent shows the following facts.

Floyd was sentenced on April 29, 2010, in the United States District Court for the District of Massachusetts, to a prison term of 70 months with a 15-year term of supervised release to follow, for Receipt of Child Pornography and Possession of Child Pornography in violation of 18 U.S.C. § 2252(A)(2).  Petitioner's projected release date is December 4, 2014, assuming he receives all good conduct time ("GCT") available to him.  (Moran Decl., Exhibit 1).

At sentencing, the sentencing judge recommended the FMC Devens for service of Petitioner's sentence.  On July 13, 2010, the BOP's Designation and Sentence Computation Center ("DSCC") instead designated Floyd to the FCI Fort Dix.  The designation noted that the judicial recommendation for service of sentence at FMC Devens was not followed based on population management issues.  It was further noted that Floyd would be reviewed for the Residential Drug Abuse program ("RDAP") and the Sex Offender Treatment Program ("SOTP")if/when he became eligible.  It was

finally noted that the Office of Medical Designations and Transfers ("OMDT") had reviewed Floyd's medical records and cleared him for the DSCC to designate Floyd at a non-medical center.  (Bullock Decl., ¶ 5 and Ex. 1 [Security/Designation Data]).

On or about August 22, 2011, Floyd was designated to FCI Allenwood in Allenwood, Pennsylvania.  This re-designation was based upon an investigation conducted by the FCI Fort Dix Special Investigative Services ("SIS") Department, in which the SIS determined that Floyd required protective custody and could not return to the general prison population at FCI Fort Dix.  The re-designation was not based on any mental health issues that could not be properly treated at FCI Fort Dix.  (Bullock Decl., ¶ 6 and Ex. 2 [Inmate Profile]).

Respondent alleges that Floyd has failed to exhaust his administrative remedies concerning his request to be transferred to FMC Devens, or his allegations that the BOP is maintaining inaccurate medical records regarding Floyd's psychological condition.  Respondent specifically shows that Floyd filed only a BP-9 administrative remedy with the Warden at FCI Fort Dix, on or about June 24, 2011, requesting a transfer to FMC Devens and alleging that the BOP has inaccurate or incomplete medical documentation for him.  Floyd has failed to complete the

5

remaining steps of the administrative remedy process.  (Moran Decl., ¶¶ 4-5 and Ex. 2).

On July 8, 2011, the Warden at FCI Fort Dix filed a response to Floyd's BP-9 administrative remedy.  In denying the relief requested, the Warden stated:

> A review of this matter indicates you are serving a 70-month sentence for Receipt/Possession of Child Pornography.  You were designated to FCI Fort Dix, NJ, on July 27, 2010.  The Bureau of Prisons attempts to designate inmates within 500 miles of their release residence.  According to your release residence of Franklin, Massachusetts, you are currently 221 miles from this location.
>
> A review of your Judgment and Commitment indicates your sentencing judge recommended you be designated to Fort Devens.  However, this is solely a recommendation, and factors such as institution population levels, inmate security and supervision needs, and available programs occasionally result in placement other than the judicially recommended facility.  You are currently a Care Level 1 inmate which can be appropriately cared for at FCI Fort Dix.  You have not indicated what information compiled by the BOP is incomplete or inaccurate, therefore this issue cannot be addressed.  Accordingly, your request is denied.
>
> If you are dissatisfied with this response, you may appeal to the Northeast Regional Director, Federal Bureau of Prisons.  Your appeal must be received in the Northeast Regional Office, U.S. Customs House, 2nd and Chestnut Streets, Philadelphia, PA 19106, within 20 calendar days of the date of this response.

(Moran Decl., Ex. 2).

Respondent contends that the habeas petition should be dismissed for failure to exhaust administrative remedies.  Respondent also argues that this Court lacks subject matter jurisdiction over Petitioner's designation and record maintenance

6

allegations because a judgment in his favor would not affect the fact or duration of Petitioner's confinement.

B.  <u>BOP Policy Regarding Designations and Transfers</u>

Congress has delegated to the Attorney General, and the BOP, the authority to determine an inmate's appropriate classification and place of confinement.  <u>See</u> <u>e.g.</u>, 18 U.S.C. § 3621; 28 C.F.R. § 0.96; BOP Program Statement 5100.08, Inmate Security Designation and Custody Classification.  Specifically, Section 3621 provides:

> (b) Place of imprisonment.-The Bureau of Prisons shall designate the place of the prisoners's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence-
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status.  The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

Generally, BOP institutions are classified into five security levels: minimum, low, medium, high, and administrative. These classifications are based on the level of security the institution is able to provide. Before an inmate's designation is made, the inmate's particular security and program needs, and certain administrative factors, are assessed to determine the appropriate level institution. The BOP designates a prisoner to a given institution based on the level of security and supervision the inmate requires, the level of security and supervision the institution is able to afford, and the inmate's program needs. BOP Program Statement 5100.08, <u>Security Designation and Custody Classification Manual</u>, Chapter 1, pg. 1.[2]

Respondent relates that the BOP's Designation and Sentence Computation Center ("DSCC") is responsible for designating new commitments to the appropriate facility. BOP Program Statement 5100.08, Chapter 3, Security Designation Procedures for New Commitments. In cases where an inmate's medical or mental health concerns raise issues for designation, the DSCC is responsible for evaluating the information to ascertain whether the inmate will need medical or mental health evaluations and treatment. <u>Id</u>., Chapter 3, pg. 7. If medical or mental health concerns are apparent, the DSCC will forward all necessary information to the

---

[2] BOP Program Statements are available on the Internet at http://bop.gov/DataSource/execute/dsPolicyLoc.

Central Office Medical Designator, which also is known as the Office of Medical Designations and Transfers ("OMDT"). Id., pp. 7-8. If an inmate is referred to the OMDT for placement at a medical facility, the OMDT will either designate a federal medical center facility, or it will turn the designation back to the DSCC if it has determined that no medical or mental health concerns exist. Id., pg. 8. See also Bullock Decl., ¶ 4.

C.   BOP Administrative Remedy Procedures

The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. See 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. See 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the

Regional Director signed the response.  See id.  Appeal to the General Counsel is the final administrative appeal.  See id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

## II.  ANALYSIS

A.  Standards of Review

Floyd brings his habeas petition as a pro se litigant.  A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

Section 2241 of Title 28 of the United States Code provides in relevant part:

> (c) The writ of habeas corpus shall not extend to a prisoner unless- . . . He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(a), (c)(3).

B.  Exhaustion of Administrative Remedies

As an initial matter, Respondent argues that Petitioner did not fully exhaust his administrative remedies before filing this habeas petition.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and

11

unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit. See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998). The court recognized that exhaustion could be excused where it would be futile. See id. In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial. Thus, the court addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20). Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached. See id. See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion

12

was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Here, this Court finds that, although Floyd had an opportunity to exhaust his administrative remedies, he failed to do so. Floyd filed a BP-9 administrative remedy with the Warden at FCI Fort Dix on or about June 24, 2011, at about the same time as he filed his habeas petition with this Court. His BP-9 asked that he be transferred to FMC Devens and alleged that the BOP is relying on inaccurate or incomplete records concerning his mental health concerns. The Warden denied Floyd's BP-9 administrative remedy on July 8, 2011, noting that Floyd's security level or Care Level 1 can be addressed at FCI Fort Dix and that the decision not to place Floyd at the judicially recommended facility was based on such factors as institution population levels, as well as his security and supervision needs. Floyd has not exhausted his administrative appeal process as set forth above. (Moran Decl., ¶ 5, Ex. 2).

Floyd also has failed to demonstrate that exhaustion would have been futile. Indeed, the BOP is in a better position to review Floyd's claim concerning a medical transfer to FMC Devens consistent with its policy concerning medical designations and transfers under the appropriate factors and circumstances in Floyd's case. Moreover, at the time he filed his BP-9

13

administrative remedy, Floyd did not indicate what information was inaccurate or incomplete regarding his mental health issues. Clearly, under the factual circumstances in this case, the goals of the exhaustion doctrine likely would have been met had Floyd employed the administrative remedy steps for the BOP to review his situation.

Further, there is no imminent release date or other immediate concerns that would implicate the futility of administrative review in this case. Accordingly, Floyd's habeas petition will be denied without prejudice for failure to exhaust his administrative remedies. See Lindsay v. Williamson, 271 Fed. Appx. 158, 160 (3d Cir. 2008); Craig v. Zickefoose, Civil No. 09-6513, 2010 WL 234908 (D.N.J. Jan.15, 2010); Shoup v. Schultz, Civil No. 09-0585, 2009 WL 1544664, at *4 (D.N.J. June 2, 2009); Breazeale v. Shultz, Civil No. 09-2118, 2009 WL 1438236 (D.N.J. May 19, 2009).

C.  Lack of Subject Matter Jurisdiction

Notwithstanding Floyd's failure to exhaust his administrative remedies, this Court alternatively finds that his habeas petition should be dismissed for lack of subject matter jurisdiction.

A habeas petition is the proper mechanism for an inmate to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to

prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997).  See also Wilkinson v. Dotson, 544 U.S. 74 (2005).  Habeas corpus is an appropriate mechanism, also, for a federal prisoner to challenge the execution of his sentence.  See Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990).  In addition, where a prisoner seeks a "quantum change" in the level of custody, for example, where a prisoner claims to be entitled to probation or bond or parole, habeas is the appropriate form of action.  See, e.g., Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991) and cases cited therein.  See also Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir.2005)(involving community-based correctional center transfers).

     In this case, however, Floyd's challenge regarding his transfer to FMC Devens does not affect the fact or the length of his incarceration.  Consequently, habeas relief is unavailable to him.  See Ganim v. Federal Bureau of Prisons, 235 Fed. Appx. 882, 884 (3d Cir. 2007)(holding that Ganim's challenge to the BOP's failure to transfer him from FCI Fort Dix to the Federal Correctional Camp at Otisville, New York, was not cognizable under § 2241 and that this Court erred by failing to dismiss Ganim's § 2241 petition for lack of jurisdiction); Bronson v.

15

Demming, 56 Fed. Appx. 551, 553-54 (3d Cir. 2002)(unpubl.).  See also Casanova v. Schultz, Civil No. 09-3754, 2010 WL 760560 at *3-*4 (D.N.J. Mar. 2, 2010)(habeas petition dismissed for lack of jurisdiction because the inmate's challenges to his transfer and custody level classification di not affect the fact or duration of his confinement); Forman v. Bureau of Prisons, Civil No. 10-1260, 2010 WL 3881415 (D.N.J. Sept. 27, 2010)(same); Wilson v. Zickefoose, Civil No. 10-2783, 2010 WL 5317333 (D.N.J. Dec. 20, 2010)(habeas petition dismissed for lack of jurisdiction where inmate's challenge to the BOP's application of a Sex Offender PSF regarding his security classification did not affect the fact or duration of his confinement).

The Court of Appeals for the Third Circuit has explained that:

> whenever the challenge ultimately attacks the "core of habeas" the validity of the continued conviction or the fact or length of the sentence challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition.  Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).  For example, in Bronson, petitioner brought habeas petitions to challenge the constitutionality of administrative decisions which placed him in a prison restricted housing unit.  See Bronson, 56 Fed. Appx. at 552.  The court of appeals rejected petitioner's argument that he may challenge the conditions of confinement in a habeas petition,

since no matter what the outcome of the habeas petition, the fact or length of petitioner's incarceration would not be affected. See id. at 554.

Also, in Jamieson v. Robinson, the Third Circuit noted that the relief requested by petitioner "would not serve to diminish the length of his incarceration," but rather sought "only to alter the conditions of his confinement." 641 F.2d 138, 141 (3d Cir. 1981). The Third Circuit followed United States Supreme Court precedent in Preiser, to note that the district court was incorrect in finding that petitioner's claims challenging the availability of work release programs in prison sounded in habeas. See Jamieson, 641 F.2d at 141. Nevertheless, the court of appeals found that despite this error, petitioner's claims were subject to dismissal. See id. See also Cohen v. Lappin, 402 Fed. Appx. 674, 676 (3d Cir. 2010)("... Cohen's challenge to his security designation and custody classification [do not challenge the basic fact or duration of his imprisonment] ... In the absence of the type of change in custody level at issue in Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir.2005), such an objection is simply not a proper challenge to the 'execution' of a sentence cognizable in a § 2241 proceeding.").

In the present case, Floyd's claim for a transfer to FMC Devens due to his alleged preexisting mental health condition plainly involves conditions of prison life, namely, the place of

17

his confinement, not the fact or duration of his incarceration. Floyd's designation to a federal correctional institution rather than the FMC Devens does not translate into a necessarily more restrictive custody level that would represent a "quantum change" in the level of his custody. See Ganim, 235 Fed. Appx. at 884. Nor is Floyd's requested designation or transfer similar to the situation presented in Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), where the Third Circuit ruled that petitioner's challenge to the BOP's decision regarding his placement in a community-based correctional center ("CCC") could be raised in a habeas action because there were many distinctions between a traditional correctional facility and a CCC that impacted the execution of Woodall's sentence.  Namely, the court noted that at CCCs, unlike in prison, inmates may be eligible for short-term releases for daily work in the community, overnight or weekend passes, and longer furloughs. See Woodall, 432 F.3d at 243.  This Court does not discern such distinctions between Floyd's designation to FCI Fort Dix or FCI Allenwood (where he presently is confined) from FMC Devens, because Floyd would be confined at the same security level in each of those facilities. There is no "quantum change" in the level of his custody at FCI Allenwood or FMC Devens.  Consequently, Floyd's claims are more properly brought in an action under the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, or in a civil rights complaint under

<u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).[3]

Therefore, upon careful review of the petition as discussed above, this Court concludes that Floyd does not seek speedier or immediate release from custody, nor does he challenge the legality of his present incarceration.  Rather, Floyd simply disputes his prison facility designation, which is more akin to a challenge regarding the conditions of his confinement.

---

[3] To the extent that Floyd argues that his classification deprives him of liberty without due process in violation of the Fifth Amendment, his claims would appear to be without merit. <u>See</u>, e.g., <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976); <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."); <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n. 9 (1976)(noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials, <u>see</u> 18 U.S.C. § 4081, and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"); <u>Wesson v. Atlantic County Jail Facility</u>, 2008 WL 5062028, *6 (D.N.J. Nov. 26, 2008)(it is well established that an inmate has no liberty interest in a particular custody level or place of confinement).  <u>See</u> <u>also</u> <u>Sandin v. Connor</u>, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment"); <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U .S. 454, 463 (1989)(holding that a liberty interest arises only where a statute or regulation uses "explicitly mandatory language" that instructs the decision-maker to reach a specific result if certain criteria are met).  Nevertheless, this Court makes no ruling on the merits of Floyd's due process claim in this Opinion.

Consequently, the petition may be alternatively dismissed for lack of subject matter jurisdiction.

## CONCLUSION

Based on the foregoing, Respondent's motion to dismiss the petition (Docket entry no. 12) will be granted, and this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is hereby dismissed without prejudice for Petitioner's failure to exhaust administrative remedies. Alternatively, the petition should be dismissed for lack of subject matter jurisdiction. An appropriate Order accompanies this Opinion.

                                       **s/ Jerome B. Simandle**
                                       JEROME B. SIMANDLE, Chief Judge
                                       United States District Court

Dated: **February 28, 2012**